IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

## TAZARIUS JAY VOND LEACH v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2014-C-2329   Mark J. Fishburn, Judge**

_____

### No. M2019-00970-CCA-R3-PC

_____

The Petitioner, Tazarius Jay Vond Leach, appeals from the denial of his petition for post-conviction relief from his convictions of two counts of aggravated robbery and one count of carjacking and his effective fifteen-year sentence. He contends that the post-conviction court erred in denying relief on his claim that he was deprived of the effective assistance of trial counsel. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Kevin Kelly, Nashville, Tennessee, for the Appellant, Tazarius Jay Vond Leach.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Glenn R. Funk, District Attorney General; Brian Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Petitioner's convictions relate to robberies and a carjacking he committed with another individual, who was not apprehended before the Petitioner's trial. At the trial, the State's evidence showed that the other individual got out of the Petitioner's car, pointed a gun at the male victim as the victim was getting into his car, and demanded valuables. The other individual took cash and a cell phone from the male victim. The Petitioner searched inside the victims' car, frisked a female passenger, and took her cell phone and wallet. During the robberies, both victims were told to get out of the car. After the victims' property was taken, the other individual with the Petitioner drove away in the victims' car, and the Petitioner followed in his car. The male victim later identified the Petitioner and the other individual as the perpetrators after reviewing photograph lineups. The defense

did not offer evidence at the trial but contended that the Petitioner had given the other individual a ride, that the Petitioner did not participate in planning the offenses, and that the Petitioner was unaware of the other individual's plans. *See State v. Tazarius Jay Vond Leach*, No. M2015-01866-CCA-R3-CD, 2017 WL 1426786, at *1 (Tenn. Crim. App. Apr. 19, 2017), *perm. app. denied* (Tenn. Aug. 16, 2017).

Following his convictions and unsuccessful appeal, the Petitioner filed the present post-conviction action, in which he alleged that he received the ineffective assistance of trial counsel.

At the post-conviction hearing, Trea Leach, the Petitioner's mother, testified that she had concerns during trial preparation that trial counsel was inexperienced and that counsel did not meet enough with the Petitioner. She said she talked by phone and communicated by text and email messages with counsel. She did not recall the frequency of their email communications. She did not recall meeting with counsel at his office or at the courthouse. She said she was unfamiliar with the trial process because neither she nor any family members had been through the process. She said counsel did not do any investigation, which she based on the fact he never stated he had investigated. She said counsel never requested a bond hearing.

Ms. Leach testified that the Petitioner was in pretrial detention and that trial counsel met with him the day before the trial, which she thought was their only meeting before the trial. She said she was not present for this meeting. She agreed she would not have been present for any meetings between counsel and the Petitioner in the courthouse holding cell or basement. She said counsel did not meet with her to prepare her for her sentencing hearing testimony.

Ms. Leach testified that trial counsel did not give her an assessment of the case based upon the evidence but that he was concerned about the Petitioner's criminal record and the current charges. She said the Petitioner expressed concern to her before the trial about whether counsel "knew what he was doing."

Ms. Leach testified that the Petitioner asked her to contact trial counsel about obtaining the trial transcript in order to assist with preparation of the appeal. She said a man who worked with counsel told her that she would have to pay $1500 for the transcript. She said the Petitioner and a relative told her there would be no cost and that she "kept going back and forth, back and forth" about receiving the transcripts. She said counsel eventually sent the transcript to her, but pages were missing.

Ms. Leach agreed that she was not a trial witness and that she did not have any factual information about the relevant events. She did not think trial counsel needed to prepare her to testify, but she said he needed to communicate with her about what she

-2-

needed to do and how they needed to investigate because she was the Petitioner's contact person outside of the jail.

Ms. Leach testified that she did not have much contact with co-counsel, who was not involved until shortly before the trial.

The Petitioner testified that he asked trial counsel several times to file a motion for bond reduction and that counsel told him "the Court wouldn't do it." The Petitioner acknowledged that he had been on parole at the time of his arrest in the present case and that he did not finish serving the sentence for which he had been on parole until after his trial. He understood that even if he were released on his own recognizance, he would have had to remain in confinement until he had served the other sentence. He said he never filed a motion to have the other sentence suspended and did not know he could have. He said he wanted to be released on bond in order to work and to "save money for a paid attorney and continue to help take care of my daughter." He said he thought a retained attorney would have more experience than trial counsel.

The Petitioner testified that when he met with trial counsel, they merely engaged in "small talk." He said counsel "would come and tell me the D.A. said this, and I would be like well go tell the D.A. this." The Petitioner said counsel would leave and not return.

The Petitioner testified that he asked trial counsel to file motions to suppress evidence of the photograph lineup identification and to withdraw. The Petitioner said counsel never told him whether he filed a motion to suppress. The Petitioner did not know the basis upon which he wanted the identification suppressed. He acknowledged that he had admitted in his pretrial statement that he had been present for the offenses.

The Petitioner testified that his codefendant was not in pretrial detention. The Petitioner said trial counsel "was always asking" if the Petitioner knew the codefendant's whereabouts. The Petitioner agreed the codefendant had not been apprehended at the time of the Petitioner's trial and sentencing hearing. The Petitioner did not recall counsel's discussing with him the possibility that the Petitioner might be able to testify against the codefendant if the codefendant were apprehended. The Petitioner said that he and counsel did not discuss much about the facts of the case in their meetings. The Petitioner said he received the discovery materials from co-counsel and thought this occurred on the second day of the trial.

The Petitioner testified that he wanted trial counsel to file a motion to withdraw because an inmate who worked in the jail's law library advised the Petitioner about the things the Petitioner and counsel should be discussing. The Petitioner said he and counsel were not seeing eye-to-eye and had "disagreements on everything." The Petitioner explained that they disagreed on "[i]ssues talking about offers and sentencing type things,"

that counsel always asked if the Petitioner had information about the codefendant's whereabouts, and that they "never even really got to" discussions of trial strategy. The Petitioner said that after he asked counsel twice to file a motion to withdraw, counsel brought the Petitioner into the courtroom to discuss the matter with the judge. The Petitioner said the judge would not permit counsel to withdraw because the case was set for trial soon. The Petitioner said that he had asked counsel long before this hearing to file a motion to withdraw and that to his knowledge, counsel never filed the motion.

The Petitioner testified that he never met with a private investigator. The Petitioner said that if trial counsel had filed a motion for funds for investigative services, he was unaware of it. The Petitioner said he did not know the trial court could grant funds for an investigator. The Petitioner said he did not know of any witnesses an investigator could have interviewed or evidence an investigator could have collected.

The Petitioner testified that although he had prior convictions, he had pleaded guilty and had not gone to trial on any of his previous charges.

The Petitioner testified that the plea offer he received "for the first three meetings" was twelve years at 85%. He said these meetings occurred at the courthouse. He acknowledged that the offer prescribed for the sentence to be served consecutively to the sentence for which he had been on parole at the time of his arrest in the present case. He said that shortly before the trial, trial counsel communicated an offer of eight years at 85% and that counsel stated he had "talked them down." The Petitioner said this conversation occurred in the courthouse's holding area. The Petitioner said he did not ask counsel about his possible sentence if he went to trial. The Petitioner said he was focused on serving any sentence in the community corrections program.

The Petitioner testified that he knew community corrections would not involve confinement and was similar to probation. The Petitioner said that trial counsel stated that if the male victim testified at the trial, "it will automatically be a mistrial, and from there on getting . . . a little plea of community corrections . . . something like that what through there [sic]." The Petitioner said that he did not understand what a mistrial was at the time and that counsel "[b]asically" told him that he could get a community corrections sentence if he were convicted at a trial because the Petitioner had a minor role in the offenses. The Petitioner did not recall counsel's having said he could receive community corrections if he were convicted of facilitation of robbery.

The Petitioner testified that trial counsel talked to him about criminal responsibility. The Petitioner said, "[T]hat was one of the things that he had brought up when he said something about a minor role or something[.]" The Petitioner did not recall what the defense strategy had been. He later agreed that the defense had been that he was coerced, acted under duress, or was forced to participate in the crime because his codefendant had

-4-

a gun.  The Petitioner said he did not know of another defense which counsel could have presented.

The Petitioner testified that trial counsel never visited him at the jail, other than about 4:00 or 4:30 p.m. on the day before the trial.  The Petitioner said that co-counsel did not come to this meeting and that he met co-counsel during jury selection.  The Petitioner did not recall counsel's encouraging him to accept the plea offer in their meeting the day before the trial.  The Petitioner said counsel advised him not to testify at the trial because he could be impeached with his prior criminal record.  The Petitioner said he would have been more interested in accepting a plea offer if he had known he was ineligible for community corrections.

The Petitioner testified that he thought during the trial that if the male victim testified, the trial court would declare a mistrial and that the Petitioner would "leave on community corrections."

The Petitioner testified that he did not have conversations with trial counsel about objecting during the trial.  The Petitioner said he did not know counsel could object and said counsel did not make objections.

The Petitioner testified that he did not meet with trial counsel to prepare for sentencing until the Petitioner came to the courthouse for the sentencing hearing.  The Petitioner said, "I don't know if he was trying to make me . . . . rat out [the codefendant], I guess. . . . I really didn't understand what he was really getting with it [sic]."  The Petitioner said that he had a job and a "home plan" but that counsel never discussed these matters.  The Petitioner said he still thought going into the sentencing hearing that he might receive community corrections.  He said that he addressed factors relevant to community corrections in his allocution and that the trial judge advised him that he was not eligible for a community corrections sentence.

The Petitioner testified that trial counsel advised him when the appeal was filed with this court.  The Petitioner said he prepared his own application for permission to appeal to the supreme court.

Trial counsel testified that he had no concerns about his ability, based upon his experience, to represent the Petitioner.  Counsel said that the Petitioner stated he no longer wanted counsel to represent him and that they spoke with the judge about the matter.  Counsel said that the Petitioner only mentioned having counsel removed once and that it occurred close to the trial date.  Counsel said that the Petitioner asked about a bond reduction and that he told the Petitioner that a bond reduction was unlikely and, in any event, would be of no effect because the Petitioner was serving a sentence for a previous conviction. Counsel denied that the Petitioner asked multiple times about a bond reduction.

Counsel did not recall the Petitioner's having asked him to file a motion to suppress and said a motion to suppress evidence of the photograph lineup identification would have been without merit in view of the Petitioner's pretrial statement admitting he had been present for the offenses.

Trial counsel testified that he had been interested in the codefendant's whereabouts because he thought the Petitioner might be able to testify against the codefendant. He agreed that the codefendant was not apprehended before the Petitioner's trial. Counsel said that he did not hire an investigator and that he did not see a reason he should have hired one.

Trial counsel testified that, under the relevant sentencing law, community corrections was unavailable to a defendant convicted of aggravated robbery. He said the relevant law required a sentence for a crime committed while a defendant was on parole to be served consecutively to the previous sentence for which the defendant had been on parole. He said the Petitioner was a Range II offender who faced a sentence of twelve to twenty years if convicted of aggravated robbery. He said that the State made a twelve-year, Range II offer and that he had multiple discussions with the prosecutor, but the offer never changed. Counsel denied that the State made an eight-year offer and that he discussed an eight-year offer with the Petitioner. Counsel said that he urged the Petitioner to take the offer on multiple occasions but that the Petitioner was uninterested in accepting a plea offer and maintained he had not committed the offenses.

Trial counsel testified that he discussed with the Petitioner the possibility of providing information to help the authorities locate the codefendant and the Petitioner's testifying against him. Counsel said he told the Petitioner that if this occurred, he would "try to push" an eight-year community corrections sentence for a conviction of a lesser charge. Counsel said he told the Petitioner that if the Petitioner were convicted of facilitation, he would be eligible for an alternative sentence.

Trial counsel testified that he discussed criminal responsibility for the conduct of another with the Petitioner and that the Petitioner did not appear to understand. He later said that he explained the difference between criminal responsibility and facilitation and that the Petitioner gave no indication he did not understand. Counsel said he argued duress at the trial because he was trying to get the Petitioner acquitted.

Trial counsel testified that he saw the Petitioner seven or eight times before the trial and that he had this discussion with the Petitioner every time he saw the Petitioner. Counsel said he visited the Petitioner at the jail two or three times and that they met on court dates. He recalled meeting with the Petitioner at the jail before the trial and before the sentencing hearing.

Trial counsel testified that he advised the Petitioner that he thought the only viable defense was duress, which was what counsel presented at the trial. Counsel said this was consistent with the Petitioner's pretrial statement, in which the Petitioner said he had been "forced to do it." Counsel said that he reviewed the State's evidence with the Petitioner and that the Petitioner understood the State's theory. Counsel said he had co-counsel, who had more trial experience in Nashville, participate in the defense. Counsel said he had co-counsel talk to the Petitioner because counsel did not think the Petitioner fully understood "what was happening."

Trial counsel testified that he had difficulty getting the trial transcript but that he sent it to the Petitioner as soon as he received it. He said that he told the Petitioner's mother that the court system would provide the transcript but that if she obtained a copy on her own, she would have to pay for it.

Trial counsel said he was "a little baffled" by the Petitioner's asking for community corrections in the allocution at the sentencing hearing. Counsel said they met at the jail before the sentencing hearing. Counsel said he thought the Petitioner should allocute, rather than testify, because the Petitioner blamed everything on the codefendant and had a prior criminal history. Counsel was concerned about cross-examination if the Petitioner testified. Counsel did not recall the Petitioner's asking about community corrections at this meeting. Counsel said he explained fully to the Petitioner that a sentence for aggravated robbery would have to be served in prison, and he thought the Petitioner understood. Counsel speculated that the Petitioner might have had the impression he could receive community corrections for an aggravated robbery conviction based upon advice from a "jailhouse attorney." He denied that he told the Petitioner after the trial that the Petitioner might receive community corrections.

The post-conviction court denied relief. This appeal followed.

The Petitioner contends that the post-conviction court erred in denying relief on his claim that trial counsel was ineffective because the Petitioner had the mistaken impression he could receive community corrections if he were convicted of the charged offenses. The State counters that the court did not err. We agree with the State.

Post-conviction relief is available "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103 (2018). A petitioner has the burden of proving his factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f) (2018). A post-conviction court's findings of fact are binding on appeal, and this court must defer to them "unless the evidence in the record preponderates against those findings." *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997); *see Fields v. State*, 40 S.W.3d 450, 456-57 (Tenn. 2001). A post-conviction court's

application of law to its factual findings is subject to a de novo standard of review without a presumption of correctness. *Fields*, 40 S.W.3d at 457-58.

To establish a post-conviction claim of the ineffective assistance of counsel in violation of the Sixth Amendment, a petitioner has the burden of proving that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). The Tennessee Supreme Court has applied the *Strickland* standard to an accused's right to counsel under article I, section 9 of the Tennessee Constitution. *See State v. Melson*, 772 S.W.2d 417, 419 n.2 (Tenn. 1989).

A petitioner must satisfy both prongs of the *Strickland* test in order to prevail in an ineffective assistance of counsel claim. *Henley*, 960 S.W.2d at 580. "[F]ailure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). To establish the performance prong, a petitioner must show that "the advice given, or the services rendered . . . are [not] within the range of competence demanded of attorneys in criminal cases." *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975); *see Strickland*, 466 U.S. at 690. The post-conviction court must determine if these acts or omissions, viewed in light of all of the circumstances, fell "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. A petitioner "is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy by his counsel, and cannot criticize a sound, but unsuccessful, tactical decision." *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994); *see Pylant v. State*, 263 S.W.3d 854, 874 (Tenn. 2008). This deference, however, only applies "if the choices are informed . . . based upon adequate preparation." *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). To establish the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The post-conviction court credited trial counsel's testimony that he advised the Petitioner of the relevant sentencing law, and the court discredited the Petitioner's testimony to the contrary. The evidence does not preponderate against the court's determination in this regard. Counsel testified that he advised the Petitioner of the sentence he faced if convicted of aggravated robbery, which included mandatory incarceration and consecutive service with the previous sentence. Counsel said he tried to get the Petitioner to provide information about the codefendant's whereabouts and testimony against the codefendant, which counsel thought he might use to the Petitioner's advantage in advocating for a conviction of a lesser offense that would provide eligibility for community corrections. Counsel denied that he told the Petitioner he might receive community

corrections for an aggravated robbery conviction.  The Petitioner is not entitled to relief on this basis.

In his brief, the Petitioner has raised a series of one-sentence arguments regarding counsel's meetings with the Petitioner, the association of co-counsel who had not met the Petitioner before the trial, and the choice of a duress defense.  However, the Petitioner states elsewhere in his argument, "The argument for granting post-conviction relief in this matter boils down to a simple question:  was the petitioner under the impression that he could get Community Corrections even if he was convicted of the charged offenses? And was that impression caused by his trial counsel?"  We have limited our review to the questions posed by the Petitioner regarding whether counsel was ineffective relative to the Petitioner's understanding of his eligibility for community corrections.  To the extent that the Petitioner has briefly mentioned other alleged shortcomings of counsel, our review of those issues is waived.  *See* T.R.A.P. 27(a)(7) (requiring that a brief contain argument which sets forth the appellant's contentions, the reasons why relief is required, citation to authority, and references to the record); Tenn. R. Ct. Crim. App. 10(b) (stating that issues which are not supported by argument, citation to authorities, or appropriate references to the record will be waived).

In consideration of the foregoing and the record as a whole, the judgment of the post-conviction court is affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE

-9-